JOHN HODGES, Sheriff, *et al.*

*v.*

JOHN C. CROWLEY.

*Opinion filed June 21, 1900.*

1. TAXES—*"high-water road tax" law of 1899 is unconstitutional.* The "high-water road tax law" of 1899, (Laws of 1899, p. 340,) is unconstitutional and void, being an attempt to evade section 12 of article 9 of the constitution, which prohibits counties from becoming indebted beyond five ·per cent upon the assessed valuation of the taxable property therein.

2. SAME—*when anticipation warrants do not relieve obligation of its character as an "indebtedness."* Anticipation warrants cannot lawfully be drawn against a tax levy the amount of which cannot be ascertained at the time, so as to relieve the transaction on the part of the municipality of the character of "incurring indebtedness," within the meaning of the constitution.

APPEAL from the Circuit Court of Alexander county; the Hon. O. A. HARKER, Judge, presiding.

By this appeal appellants seek to reverse a decree of the court below perpetually enjoining the collection of a "high-water road tax" and the issuing of anticipation warrants upon such tax. The bill upon which the decree is based was filed by appellee February 24, 1900, ·to the following February term of the circuit court of Alexander county, and a temporary writ of injunction was issued. The defendants to the bill, these appellants, entered their appearance and presented a general demurrer to the bill for want of equity, but the court overruled it, and, they failing to avail themselves of leave to answer over, a decree was entered according to the prayer of the bill.

The tax was levied under the emergency act approved April 24, 1899, (Laws of 1899,·p. 340,) which provides:

"Section 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly:* That when a vote is taken at any regular or special election in any county

not under township organization resulting in a majority of the legal votes cast at such election being for a tax to build, raise or repair a road or roads, wholly or in part, over or upon land subject to overflow or inundation by headwater, backwater or sipe water from any navigable river or wholly or in part over or upon land below the flood line of such river or rivers, such tax not exceeding the rate of one-half per cent per annum to be levied annually for a period not exceeding ten years on the taxable property in such county not under township organization as now contain such roads as aforesaid, or in which it may be necessary to build such roads, it shall be lawful by an order of the board of county commissioners of such county, signed by the chairman and at least one other member of the board to make an appropriation of the taxes so authorized by such vote; and it shall be lawful for said board of county commissioners to make an order levying such taxes for the whole period so authorized by such vote to be annually extended and to draw anticipation warrants thereon to the amount that such levy would produce, based on the assessment of the preceding year upon taxable property in such county. Such warrants shall draw interest at not to exceed the rate authorized by the vote taken and not to exceed seven per cent per annum. .

"Sec. 2. Such warrants drawn as herein provided shall not be sold below par."

Section 3 makes it the duty of the board of county commissioners, before submitting the question to a vote, to cause to be made a plat of roads to be raised or repaired, and also an estimate of the probable cost of the contemplated work by a competent engineer. Section 4 requires the county clerk to designate, in suitable words, the proposition upon which the vote is to be taken, and the last clause of that section is: "The vote upon the proposition shall be taken in the manner and under the law governing the election of road district officers in

counties not under township organization." Section 5
places such roads under the control of the county com-
missioners, and section 6 provides: "It shall be the duty
of the county clerk of the county in which a tax, as here-
in provided for, is to be levied, to annually extend each
year such taxes when an order is certified to him by the
board of county commissioners making such levy, and
such tax is to be extended at the rate fixed in such order
not exceeding one-half per cent and not exceeding ten
years, and to extend the same in a separate column desig-
nated 'high-water road tax.'" Sections 7 and 8 relate to
the collection and paying out of the taxes, and section 9
to the drawing of anticipation warrants. Section 10 pro-
vides that the money collected shall be expended by the
county commissioners for the sole purpose of building,
raising or repairing roads subject to overflow, etc. Sec-
tion 11 relates to the calling of an election by the county
commissioners, and authorizes them to call a special
election not less than thirty days after the act shall go
into effect, submitting to the legal voters of the county
the question of the levy of the taxes, on giving twenty
days' notice of such special election. Section 12 is as
follows: "Such tax so authorized shall still permit the
levy of the seventy-five cents per $100 valuation now au-
thorized to be levied for county purposes annually as here-
tofore." The last section (13) is the emergency clause.

The general demurrer admitting all the facts well
pleaded in the bill, the question here must be, are those
facts sufficient to sustain the decree below.

The following, among other facts, are alleged in the
bill: At the September session of the county commis-
sioners of the county, in 1899, they ordered a special
election to be held on the 7th day of the next November
on the question of levying a high-water road tax, and
directing the county clerk to give notice thereof as re-
quired by law; also, to designate, in suitable words, the
substance of the proposition upon which the vote was to

be taken, and that he arrange the ballots so that the votes might be cast for or against such proposition. Notice of the election was accordingly given, the proposition being stated as follows: "Proposition for a tax of one-half per cent on the taxable property in Alexander county, to be levied annually for a period of ten years, to build, raise and repair roads, wholly or in part over or upon lands subject to overflow or inundation by headwater, backwater or sipe water from any navigable river, or wholly or in part over or upon land below the flood line of such river or rivers, according to the plan and estimates of such roads on file in the office of the county clerk of said Alexander county."

·The election was held under the general Election law of the State, and not under the provisions of section 4, *supra,* of the act. A large majority of the votes cast were in favor of the proposition. On the 28th day of the same month the county board made the following order:

"Whereas, it appears to the board of county commissioners of Alexander county, in the State of Illinois, that at a special election held in said Alexander county on Tuesday, the seventh day of November, A. D. 1899, a vote was taken, resulting in a majority of the legal votes cast at such election being for a tax of one-half per cent on the taxable property in said Alexander county, Illinois, to be levied annually for a period of ten years, to build, raise and repair roads wholly or in part over or upon lands subject to overflow or inundation by headwater, backwater or sipe water from any navigable river, or wholly or in part over or upon land below the flood line of such river or rivers, according to the plat and estimates of such roads on file in the office of the county clerk of said Alexander county.

"It is ordered by the said board of county commissioners of said Alexander county, Illinois, that the tax of one-half per cent on the taxable property in said Alexander county to be levied annually for a period of ten years, so authorized by said vote of the legal voters of the said Alexander county, be and the same is hereby appropriated to build, raise and repair roads wholly or in part over or upon lands subject to overflow or inundation by headwater, backwater or sipe water from any navigable river, or wholly or in part over or upon land below the

flood line of such river or rivers, according to the plat and esti-
mates of such roads on file in the office of the county clerk of
said Alexander county.

"It is further ordered by the board of county commissioners
of said Alexander county, Illinois, that the said tax so author-
ized by the said vote, and hereinbefore appropriated, of one-
half per cent on the taxable property in Alexander county, be
and the same is hereby levied for a period of ten years, to be
extended annually, to build, raise and repair roads wholly or in
part over or upon lands subject to overflow or inundation by
headwater, backwater or sipe water from any navigable river,
or wholly or in part over or upon land below the flood line of
such river or rivers, according to the plat and estimates of such
roads on file in the office of the county clerk of said Alexander
county.

"It is further ordered that the county clerk of said Alexan-
der county extend the said tax of one-half per cent each and
every year, for the period of ten years, against all the property
in said county, both real and personal, listed for taxation, upon
the collector's books for the years 1899, 1900, 1901, 1902, 1903,
1904, 1905, 1906, 1907 and 1908, respectively; and it is further
ordered that the county clerk extend the said tax in a separate
column, to be designated, 'high-water road tax.'

> JOHN A. MILLER, *Chairman.*
> JOHN A. BOURGOIS, *Com.*
> ISRAEL CAUBLE, *Com.*"

At the time this order was made the county was in-
debted in excess of the five per centum of the valuation
of the taxable property in said county, as ascertained by
the last assessment for State and county purposes previ-
ous to making the order.    The county clerk extended on
the tax books of the county for the year 1899 one-half of
one per cent on the dollar against all the real and per-
sonal taxable property in the county, including that of
the complainant, as equalized by the State board for
that year.    The tax books were delivered to the sheriff,
and he was about to proceed to collect the tax and the
county commissioners to draw anticipation warrants at
once on and against the tax for the aggregate amount
which would be produced by calculating one-half of one

per cent per annum on the equalized valuation of all the taxable property in the county for the year 1898 for the whole period of ten years.

WALTER WARDER, and WILLIAM N. BUTLER, for appellants.

LANSDEN & LEEK, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

Several special reasons are alleged against the validity of the tax. A casual reading of the statute shows that its object and purpose is to evade section 12 of article 9 of the constitution of 1870, which prohibits counties from becoming indebted beyond five per cent on the valuation of their taxable property. Its language is in many respects exceedingly vague, if not meaningless. What is meant by *one-half per cent?* There is no express requirement that the question of issuing anticipation warrants shall be submitted to a vote of the people, and yet it provides that the warrants shall draw interest at not to exceed the rate authorized by the vote taken. By the first part of section 1 the vote is to be on the levy of a tax *annually,* but subsequent clauses attempt to authorize the commissioners to make the levy for the whole period of ten years, and draw warrants against the aggregate amount of such tax to the amount the levy would produce upon the assessment of the previous year. The requirement in section 4 as to the manner in which the election shall be held is irreconcilable with other parts of the act, and admittedly incapable of being complied with in this and other counties in the State. It seems to contemplate the negotiation and sale of the anticipation warrants without reference to the making of contracts for the performance of the work contemplated,— that is, the building, raising or repairing roads.

We think, however, giving its various provisions the construction most favorable to the validity of the stat-

ute, it clearly contravenes the foregoing section of the constitution, and is therefore invalid. As before indicated, it is a manifest attempt to authorize counties throughout the State, not under township organization, to become indebted beyond the limitation fixed by that section. It cannot be denied that if the legislature can by an act of this kind authorize counties to levy a tax of one-half per cent (whatever that may mean) for the purpose of repairing, raising or building roads for a period of ten years, it may with equal right authorize the levy of a tax at any greater per cent for any number of years for any other lawful purpose, and thus allow them to contract debts without limit. Of course, the attempt is made to evade the language of the constitution and the construction we have placed upon it, by authorizing the issue of so-called anticipation warrants. It is clear, however, to our minds, that anticipation warrants can not be issued under the provisions of this act against the aggregate amount of the tax for ten years, within the meaning of our decisions, which hold, "that when liabilities are created and appropriations are made which are within the limits of the revenue accruing to meet them, they are not debts, within the meaning of the prohibition of the constitution." *City of Springfield* v. *Edwards*, 84 Ill. 626, and *Law* v. *People ex rel.* 87 id. 385.

In order to authorize the issuing of warrants upon an appropriation so as to give the transaction the effect contemplated by the foregoing rule, it is a pre-requisite that the tax appropriated upon which the warrants are drawn must at the time be actually levied; and second, that the legal effect of the contract between the corporation and the individual receiving the warrants, made at the time of the appropriation, must be that the appropriation and issuing and accepting of the warrants on the treasury for their payment are such as to prevent any liability on the contract against the corporation. As we said in *City of Springfield* v. *Edwards*, *supra* (p. 633):

"The principle, as we understand, is, there is in such case no debt, because one thing is simply given and accepted in exchange for another. When the appropriation is made and the order or warrant on the treasury for its payment is issued and accepted, the transaction is closed on the part of the corporation, leaving no future obligation, either absolute or contingent, upon it whereby its debt may be increased. But until a tax is levied there is nothing in existence which can be exchanged, and an obligation to levy a tax in the future for the benefit of a particular individual necessarily implies the existence of a present debt in favor of the individual, against the corporation, which he is lawfully entitled to have paid by the levy. If the making of the appropriation and issuing and accepting a warrant for its payment does not have the effect of relieving the corporation of all liability, or, in other words, if it incurs any liability thereby, it must, manifestly, incur, either absolutely or contingently, a debt."

Under section 1 of article 9 of the constitution of this State all taxes must be levied by valuation, the value to be ascertained by some person or persons to be elected or appointed. There can be no lawful levy of a tax except upon an assessment, and under our system all assessments are made annually. How can a lawful levy of a tax be made in 1899 for a year ten years in the future? Admittedly the value of the taxable property of Alexander county for each of the years after 1899 is impossible of ascertainment now. Therefore the mere order of the county commissioners that a levy be made in those future years amounts to nothing as an actual levy of a tax. A tax cannot be said to be levied until it has been extended against assessed taxable property. Moreover, no one can now tell what the amount of the levy will be at the end of ten years, so that warrants may be drawn within that amount. How, then, can it be said that warrants may be drawn upon the taxes for the aggregate amount levied

for the whole ten years? This difficulty is recognized
by the act itself, and an attempt is made to avoid it
by authorizing the issue of anticipation warrants to the
amount that the levy would produce based on the as-
sessment of the preceding year upon the taxable prop-
erty of the county. That is, having ordered a levy of
one-half of one per cent upon the taxable property of the
county for each of the years from 1899 to 1908, inclusive,
the county commissioners of Alexander county may issue
anticipation warrants upon that levy to the amount that
it would produce based on the assessment of the year
1898. There is no reason for presuming, much less can
it be ascertained as a fact, that the assessment for the
year 1898 is not greater in amount than for 1899, or will
be for each of the remaining nine years. As shown by
the report of the State Board of Equalization for the
year 1899, the taxable property of this county was greater
in 1898 than it was in the year 1899. In the succeeding
years the amount may or may not be so increased that
the levy for the whole ten years will be sufficient to pay
anticipation warrants based on the assessment of 1898.
Whether that will be so or not is wholly uncertain. To
say, if it proves insufficient the loss must fall upon the
holders of the warrants does not meet the question here,
which is whether anticipation warrants can be lawfully
drawn upon a levy the amount of which cannot be ascer-
tained, so as to relieve the transaction on the part of the
county of the character of "becoming indebted" beyond
the constitutional limit.

It is by no means clear that the act is not also in con-
flict with section 8 of article 9 of the constitution, but it
is unnecessary to express any opinion on that question
now. We are of the opinion that there are other consid-
erations upon which the decree of the court below would
have to be affirmed even if the statute could be upheld,
but regarding the legislation as vicious and calculated
to lead to evil results in breaking down the wise provi-

sions of the constitution against municipalities becoming indebted beyond the limit fixed, we prefer to base this decision on the broad ground that the law is invalid.

The decree of the circuit court will be affirmed.

*Decree affirmed.*